NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 1 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-525 |
| Plaintiff - Appellee, | D.C. No. 3:23-cr-01960-CAB-1 |
| v. | |
| ELIAS ARZATE-MOLINA, | MEMORANDUM* |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-546 |
| Plaintiff - Appellee, | D.C. No. 3:22-cr-01600-CAB-1 |
| v. | |
| ELIAS ARZATE-MOLINA, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Submitted November 18, 2025**

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Pasadena, California

Before: BYBEE, LEE, and DE ALBA, Circuit Judges.

Appellant Elias Arzate-Molina[1] directly appeals from his jury conviction under 8 U.S.C. § 1326 for attempted illegal reentry into the United States and from the district court's revocation of supervised release stemming from a prior illegal reentry conviction. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

We review *de novo* "whether the government violated its discovery obligations," *United States v. Obagi*, 965 F.3d 993, 997 (9th Cir. 2020), and whether the government properly construed the hearsay rule. *United Stated States v. Johnson*, 875 F.3d 1265, 1278 (9th Cir. 2017). We review for abuse of discretion a district court's discovery rulings, *United States v. Cano*, 934 F.3d 1002, 1023 n.15 (9th Cir. 2019); refusal to admit evidence under an exception to the hearsay rule, *Johnson*, 875 F.3d at 1278; and "refusal to give an adverse inference instruction, when properly raised by the appellant." *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013).

1. The government's introduction of a Manifest of Persons and Property Transferred ("manifest") complies with its obligations under Federal Rule of Criminal Procedure 16(c) and the district court did not abuse its discretion in admitting the manifest pursuant to Rule 16. "Rule 16 does not prevent the

---

[1] Appellant refers to himself as "Mr. Arzate" and we do the same.

government from introducing any new evidence after a trial begins; indeed Rule 16 itself contemplates that evidence may be disclosed 'during trial.'" *See United States v. Marshall*, 132 F.3d 63, 70 (D.C. Cir. 1998) (quoting FED. R. CRIM. P. 16(c)).

Nor did the government violate Rule 16(a)(1)(E)(i). Mr. Arzate's reliance on *United States v. Hernandez-Meza* is misplaced. 720 F.3d 760 (9th Cir. 2013). Unlike in *Hernandez-Meza*, here, the district court did not reopen the government's case-in-chief, the manifest was cumulative of other evidence that Mr. Arzate had been removed and was therefore not material to Mr. Arzate preparing his defense,[2] and it does not appear that the government deliberately withheld the manifest.[3]

2.      Any abuse of discretion in admitting the manifest as hearsay was harmless. The manifest includes a stamp allegedly made by Mexican authorities that the government relied on as evidence of Mr. Arzate's removal. The stamp, however, is akin to a third-party statement and the stamp therefore does not meet

---

[2]     For example, the government's evidence included a warrant of removal indicating that Mr. Arzate was removed, and testimony from a U.S. Customs and Border Protection ("Border Patrol") agent, who signed the warrant of removal, that he had witnessed Mr. Arzate "physically walk back to Mexico." Mr. Arzate argues that this testimony was "inconsistent" as the agent either remembered witnessing Mr. Arzate's removal because of his independent recollection or because he had signed the warrant. Yet the agent appears to have simply offered two reasons why he remembered Mr. Arzate's removal.

[3]     The government located the manifest on the first day of trial and produced the record to Mr. Arzate on the same day; the next day, the government informed the district court of the manifest.

the public-records exception to hearsay under Federal Rule of Evidence 803(8). *See United States v. Morales*, 720 F.3d 1194, 1202 (9th Cir. 2013). In overruling Mr. Arzate's hearsay objection to the introduction of the stamp, the district court failed to give any indication that it applied the correct legal standard and, in this way, abused its discretion. *See United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009). Nonetheless, it is "more probable than not" that any abuse in discretion in admitting the manifest was harmless because the government introduced other evidence that Mr. Arzate was removed. *See United States v. Lopez*, 913 F.3d 807, 825 (9th Cir. 2019) (internal quotation marks and citation omitted).

3.      The district court did not abuse its discretion by refusing to provide an adverse-inference jury instruction regarding the destruction of video recordings that were overwritten based on an automatic 30-day override process. The parties offer competing standards for determining whether an adverse-inference jury instruction on the destruction of evidence is warranted. *Compare Sivilla*, 714 F.3d at 1173, *with United States v. Romo-Chavez*, 681 F.3d 955, 961 (9th Cir. 2012). We need not resolve this dispute as Mr. Arzate's challenge to the district court's refusal to provide such an instruction fails under either standard. *See United States v. Fries*, 781 F.3d 1137, 1152 n.5 (9th Cir. 2015).

Applying *Sivilla*'s balancing test, Mr. Arzate's challenge fails. The government's conduct, "while not entirely blameless," appears to fall "within a

general range of reasonableness." *See United States v. Robertson*, 895 F.3d 1206, 1213 (9th Cir. 2018).  The video recordings were overwritten while in the government's custody; however, the prosecuting attorneys were not involved in the overwriting (they had requested that the video be preserved).  *See id.* at 1213–14.  Moreover, the video does not appear to be exculpatory and, for the same reason, it cannot be said that the government acted in disregard of the defendant's interests because "the exculpatory value of the evidence was not apparent."[4]  *See id.*  While the recordings were overwritten while in the custody of Border Patrol, an agency involved in the case against Mr. Arzate, both Border Patrol agents and the prosecution requested that the video recordings be preserved and it does not appear that the recordings were overwritten deliberatively.  *See id.*

Turning to prejudice, Mr. Arzate shows none.  The video recordings were not central and important to Mr. Arzate's defense, and any inferences lost because the recordings were overwritten do not tip toward a show of prejudice.[5]  *See id.* at

---

[4]    For example, a Border Patrol agent who saw the video images testified that they showed heat signatures moving at a running pace north of the border, one of which broke off from the group and went into a car lot where no other heat signatures were present, which is where another Border Patrol agent apprehended Mr. Arzate.  Mr. Arzate, however, claimed to have been living in the car lot for two months since his release from a detention center and before his apprehension.

[5]    While Mr. Arzate argued that he had not been removed from the country (and therefore had not reentered), a Border Patrol agent's testimony about what the video images showed indicates that the recordings would not have supported Mr. Arzate's defense.

1214.  The probable effect on the jury from the unavailability of the video was also not "significantly prejudicial" because Mr. Arzate "was permitted, and did, argue before the jury that [the government] failed to preserve the video."  *See id.*

Applying *Romo-Chavez*'s bad-faith standard, Mr. Arzate's challenge also fails.  Mr. Arzate does not appear to argue that the evidence was overwritten in bad faith.  *See Romo-Chavez*, 681 F.3d at 961.  Nor did Mr. Arzate show that he was prejudiced by the destruction of the video.  *See supra*.

**AFFIRMED.**